```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF KENTUCKY
```
**SOUTHERN DIVISION at LONDON**

```
TERRY L. PETO,                   )
                                 )
     Plaintiff,                  ) Civil Action No. 6:08-190-JMH
                                 )
v.                               )
                                 )            MEMORANDUM OPINION
MICHAEL J. ASTRUE, COMMISSIONER  )               AND ORDER
OF SOCIAL SECURITY,              )
                                 )
     Defendant.                  )
```

                    **    **    **    **    **

This matter is before the Court on cross motions for summary judgment [Record Nos. 12 & 13][1] on Plaintiff's appeal of the Commissioner's denial of his application for disability insurance benefits. The Court, having reviewed the record and being otherwise sufficiently advised, will deny Plaintiff's motion and grant Defendant's motion.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff filed for a period of disability and disability insurance benefits as well as supplemental security income on March 8, 2006, alleging onset of disability of July 30, 2005, due to degenerative arthritis in the right knee, a spinal disc problem/low back pain, bilateral carpal tunnel syndrome, and depressive disorder. [AR 139.] Plaintiff's applications were denied upon initial application and reconsideration. [AR 88, 95.] A hearing

---

[1] These are not traditional Rule 56 cross motions for summary judgment. Rather, they are procedural devices used by the Court to obtain the views of the parties regarding the sufficiency of the evidence contained in the administrative record developed before the Commissioner.

on his applications was held on October 16, 2007, and his applications were subsequently denied by Administrative Law Judge ("ALJ") Donald A. Rising on March 7, 2008. [AR 9-19, 32.] The Appeals Council denied review on April 15, 2008. [AR 2.] Plaintiff timely pursued and exhausted his administrative and judicial remedies, and this matter is ripe for review and properly before this Court under § 205(c) of the Social Security Act, 42 U.S.C. § 405(g).

Plaintiff was 44 years old at the time of ALJ Rising's final decision. He completed eighth grade, failing twice, and later obtained a high school equivalency certificate. [AR 37-38.] Plaintiff's last job was in shipping and receiving for a company that produced steel pipe and duct work. [AR 38.]

Plaintiff was treated at Cumberland River Comprehensive Care Center ("Comp Care"). Plaintiff's records from Comp Care noted his Global Assessment of Functioning ("GAF") ranged between 50 and 65 from October 19, 2001, to March 14, 2007. [AR 694, 753, 756, 849, 853.] Records from Plaintiff's emergency room visit to Appalachian Regional Healthcare noted his GAF at 35 at the time he was admitted and 80 at the time of his release. [AR 860, 861.]

On June 24, 2006, Dr. Jeanne Bennett, Psy.D., performed a consultative examination of Plaintiff. Dr. Bennett assessed Plaintiff's GAF at 45. In determining Plaintiff's functional capacities, Dr. Bennett noted Plaintiff's "capacity to understand,

remember, and carry out instructions toward the performance of simple, repetitive task is not affected by the impairment." [AR 775.] Additionally, Dr. Bennett noted "moderate to marked limitations" in Plaintiff's ability to tolerate "the stress and pressure of day-to-day employment." [AR 775.] Dr. Bennett stated Plaintiff had moderate limitations to his "capacity to sustain attention and concentration towards the performance of simple, repetitive task[s]." [AR 775.] Finally, Dr. Bennett noted Plaintiff's "capacity to respond appropriately to supervision, coworkers, and work pressures in a work setting is affected" with slight limitations. [AR 775.]

On October 16, 2007, William Ellis, a vocational expert, testified that a person of Plaintiff's age, education, and work experience, with the same residual functional capacity ("RFC"), would be able to perform occupations at a light exertional level. [AR 51.] The representative jobs included production worker and packer. Mr. Ellis also testified that at a sedentary exertional level, where one could alternate between sitting and standing, the same person could work representative jobs as an assembler, inspector, or production worker. [AR 51.]

Plaintiff alleges disability due to physical and mental impairments. On March 7, 2008, the ALJ made the following findings of fact in determining Plaintiff was not entitled to disability benefits:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2006.

2. The claimant has not engaged in substantial gainful activity since July 30, 2005, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe combination of impairments: bilateral osteoarthritis of the knees; low back pain; depressive disorder; general anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform light work except he requires a sit/stand option. The claimant is limited to work that involves no more than simple tasks in object-focused settings.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on June 17, 1961, and was 44 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 30, 2005

through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Plaintiff does not appeal the ALJ's finding that he is restricted to a limited range of light work based on his physical condition. Instead, he challenges the ALJ's rejection of Dr. Bennett's opinion and asserts that the vocational expert testimony relied upon by the ALJ did not carry the Commissioner's burden of proof at the final step of the evaluation process.

## II. OVERVIEW OF THE ALJ HEARING

In determining whether a claimant is disabled or not, the ALJ conducts a five-step analysis:

> 1.) Is the individual engaging in substantial gainful activity? If the individual is engaging in substantial gainful activity, the individual is not disabled, regardless of the claimant's medical condition.
>
> 2.) Does the individual have a severe impairment? If not, the individual is not disabled. If so, proceed to step 3.
>
> 3.) Does the individual's impairment(s) meet or equal the severity of an impairment listed in appendix 1, subpart P of part 404 of the Social Security Regulations? If so, the individual is disabled. If not, proceed to step 4.
>
> 4.) Does the individual's impairment(s) prevent him or her from doing his or her past relevant work, considering his or her residual functioning capacity? If not, the individual is not disabled. If so, proceed to step 5.
>
> 5.) Does the individual's impairment(s) prevent him or her from performing other work that exists in the national economy, considering his or her residual functioning capacity together with the "vocational factors" of age, education, and work experience? If so, the individual is disabled. If not, the individual is not disabled.

*Heston v. Comm'r of Social Security,* 245 F.3d 528, 530 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir 1994).

### III. STANDARD OF REVIEW

In reviewing the ALJ's decision to deny disability benefits, the Court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, 42 U.S.C. § 405(g), *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001), and whether the ALJ employed the proper legal standards in reaching his conclusion, *see Landsaw v. Sec'y of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286.

### IV. ANALYSIS

Plaintiff argues (1) that ALJ Rising improperly rejected the

opinion of Dr. Bennett, a consultative examining physician, and (2) that the vocational expert's testimony does not carry the Commissioner's burden of proof in the final step of the sequential evaluation process. The Commissioner argues (1) that Dr. Bennett's assessment deserved little weight because the GAF was not consistent with Dr. Bennett's own findings and (2) that ALJ Rising properly posed hypothetical questions to the vocational expert.

**A. DR. BENNETT'S OPINIONS**

Substantial evidence supports the ALJ's decision to discredit the opinions of Dr. Bennett. The opinions of treating physicians are entitled to much deference, *see Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); however, the deference given to a particular physician's opinion depends upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support his opinion, how consistent the opinion is with the record as a whole, the specialty of the medical source, and other factors. *See* 20 C.F.R. § 404.1527(d); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997). Furthermore, opinions on some issues, such as whether the claimant is disabled and the claimant's RFC, "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §

404.1527(e); *see* Social Security Ruling (SSR) 96-5p. As the Sixth Circuit has stated, "[t]he determination of disability is ultimately the prerogative of the Commissioner, not the treating physician." *Warner*, 375 F.3d at 391.

In this case, the ALJ found that Dr. Bennett's assessment was not supported by her own findings and was inconsistent with the remaining evidence. In particular, the ALJ noted that Dr. Bennett reported a GAF of 45, connoting a functional level in the range of serious symptoms. However, Dr. Bennett's findings reported "slight limitation" in Plaintiff's ability to deal with work pressures, "moderate limitation" in his ability to sustain concentration towards performing simple repetitive tasks, and "moderate to marked limitation" in Plaintiff's ability to tolerate day-to-day employment. Assuming Dr. Bennett's GAF of 45 was accurate, ALJ Rising could expect her findings to include psychomotor disturbances, suicidal ideation, severe obsessional rituals, or other serious symptoms. In essence, the findings did not support or fully explain the score and, thus, ALJ Rising afforded Dr. Bennett's report less weight. *See* 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

Moreover, ALJ Rising noted that other evidence in the record did not support the GAF in Dr. Bennett's consultative report. The ALJ noted treating physicians scored Plaintiff's GAF score between fifty-five and sixty-five in their reports. On March 1, 2007, Dr.

-8-

Syed Raza, Plaintiff's treating physician reported his GAF at 65. [AR 853.] Plaintiff's own consultative examination resulted in a GAF of 50. State Agency consultants found that Plaintiff had moderate limitations, that he could perform simple repetitive work tasks without difficulty, and that Plaintiff could relate appropriately to others and tolerate routine work stress in an object-focused setting. The record as a whole supported ALJ Rising's decision to discount Dr. Bennett's opinion. *See* 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4). The weight of the evidence tends to show Plaintiff suffered some mental limitation, but less limitation than Dr. Bennett's GAF of 45 would indicate. In other words, there is more than a scintilla of evidence in the record that a reasonable mind would accept as adequate to support the ALJ's decision to afford less weight to Dr. Bennett's opinion.

**B.   VOCATIONAL EXPERT'S TESTIMONY**

The ALJ was not required to include certain restrictions in the hypothetical posed to the vocational expert and, consequently, the Commissioner met his burden of proof at the fifth step. When posing a hypothetical question to a vocational expert, an ALJ is only required to incorporate into the hypothetical question limitations which he accepts as credible. *See Sias v. Sec'y of Health and Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988). "Substantial evidence of a claimant's [RFC] may lie in the testimony of a vocational expert in response to a hypothetical

question that 'accurately portrays [the claimant's] individual physical and mental impairments.'" *Davis v. Sec'y of Health and Human Servs.*, 915 F.2d 186, 189 (6th Cir. 1990) (citing *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)).

Here, the ALJ posed a series of three hypothetical questions to the vocational expert.  First, the ALJ asked the vocational expert to assume someone of Plaintiff's age, education, and work experience, "limited only to simple tasks in object-focused settings; . . . within a light exertional framework where one may alternate between sitting or standing position." [AR 50.] Next, the ALJ altered the hypothetical to assume "a sedentary exertional framework with those limitations, including the option to alternate sitting and standing[.]"  Finally, the ALJ altered the hypothetical to assume that the person is "intolerant of routine work stress."  In the first two scenarios, the vocational expert reported the availability of jobs for such an individual.  However, he reported no available jobs for the final hypothetical worker.

Plaintiff's complaint seems to be that the hypothetical workers did not accurately portray his actual mental impairments. As an initial matter, the ALJ ultimately found that Plaintiff's mental impairments were not severe enough to match the final hypothetical worker.  The ALJ was not required to introduce those limitations into a hypothetical.  It would be incongruous to bind

the ALJ to a finding based on hypothetical workers with more severe limitations than the Plaintiff. The first two hypothetical workers accurately portrayed Plaintiff. Both scenarios reflected his mental limitations and his ability to perform work involving no more than simple tasks in object-focused settings. Two hypothetical questions were necessary to present Plaintiff's physical impairments. The hypothetical situations accurately reflected the Plaintiff's physical impairments by accounting for jobs where Plaintiff might work at a sedentary level (sit option) or a light exertional level (stand option). The Commissioner met his burden at the fifth step because the hypothetical questions accurately portrayed Plaintiff's impairments. The ALJ's finding that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform was supported by substantial evidence in the form of the vocational expert's testimony.

## V. CONCLUSION

For the foregoing reasons, the opinion of the Commissioner will be affirmed.

Accordingly, **IT IS ORDERED:**

(1) That the Commissioner's motion for summary judgment [Record No. 13] be, and the same hereby is, **GRANTED.**

(2) That Plaintiff's motion for summary judgment [Record No. 12] be, and the same hereby is, **DENIED.**

-11-

This the 23rd day of March, 2009.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge